[No. 683-3. Division Three. March 12, 1973.]

EROS O. BALDISSEROTTO, *Appellant,* v. THE STATE EMPLOYMENT SECURITY DEPARTMENT, *Respondent.*

*K. Edison Gimple,* for appellant.

*Slade Gorton, Attorney General, Daniel C. Rooney* and *Joseph M. Littlemore, Assistants,* for respondent.

GREEN, C.J.—Eros O. Baldisserotto was employed by the Port of Moses Lake. On June 16, 1971, his employment was terminated. Thereafter, he applied to the Employment Security Department for unemployment compensation. His application was denied. After exhausting his administrative remedies to no avail, he appealed to the Superior Court for Grant County where the denial was affirmed. This appeal followed.

The facts are not in dispute. The Port of Moses Lake is a political subdivision of the State of Washington. RCW 53.04. The port contracted with the United States to furnish supplies and services necessary to maintain certain housing units at the former Larson Air Force Base. Baldisserotto was employed by the port as a maintenance mechanic in the performance of that contract.

The port's obligation to make contributions to the employment security fund on behalf of its employees is governed by RCW 50.04.200:

The term "employment" shall not include service performed in the employ of any political subdivision of this state or of any instrumentality of a political subdivision: *Provided,* That this exemption shall not be deemed to

apply . . . . if any political subdivision of this state or of any instrumentality of a political subdivision voluntarily elects coverage for all or any distinct class or group of individuals in its employ: . . .

The port did not voluntarily elect coverage under this statute nor make contributions to the fund.

Notwithstanding the port's exemption from the Employment Security Act, Baldisserotto contends the McNamara-O'Hara Service Contract Act, 41 U.S.C.A. § 351 (Supp. 1973), required coverage and rendered inoperative the provisions of RCW 50.04.200. We disagree.

The applicable portions of 41 U.S.C.A. § 351 (Supp. 1973) provide:

(a) Every contract . . . entered into by the United States . . . in excess of $2,500, . . . the principal purpose of which is to furnish services in the United States through the use of service employees, . . . shall contain the following:

. . .

(2) A provision specifying the fringe benefits to be furnished the various classes of service employees, engaged in the performance of the contract or any subcontract thereunder, *as determined by the Secretary* [of Labor] *or his authorized representative to be prevailing for such employees in the locality,* . . . Such fringe benefits shall include . . . unemployment benefits . . . The obligation under this subparagraph may be discharged by furnishing any equivalent combinations of fringe benefits or by making equivalent or differential payments in cash under rules and regulations established by the Secretary.

(Italics ours.) Regulations promulgated under this statute provide:

Fringe benefits under contract exceeding $2,500.

. . .

(b) Under this provision, the *fringe benefits, if any,* which the contractor or subcontractor is required to furnish his service employees engaged in the performance of

the contract *are specified in the contract documents* . . .

(Italics ours.) 29 C.F.R. § 4.162 (b) (1972).

Furnishing fringe benefits or equivalents.

(a) *General.* Fringe benefits specified under the Act shall be furnished, in addition to the specified monetary wages, by the contractor or subcontractor to employees engaged in performance of the contract, *as provided in the determination of the Secretary or his authorized representative and prescribed in the contract documents,* or, in the event that this is not possible or practicable, the obligation to furnish such benefits "may be discharged by furnishing any equivalent combinations of fringe benefits or by making equivalent or differential payments in cash under rules and regulations established by the Secretary." (Act, section 2(a)(2).) The governing rules and regulations for furnishing such equivalents are set forth in Subpart B of this part. The various fringe benefits listed in the Act are illustrative of those which may be found to be prevailing for service employees in a particular locality. The *benefits which an employer will actually be required to furnish employees performing on a specific contract will be specified in the contract documents.*

(Italics ours.) 29 C.F.R. § 4.170 (1972).

The contract between the port and the United States is not in evidence. The record is silent as to its provisions. There is no evidence the secretary or his authorized representative ever made any determination as to the fringe benefits, if any, applicable in the Moses Lake locality. There is no dispute that the port did not elect coverage under the Employment Security Act.

Based upon the record before us, we must conclude that the trial court correctly affirmed the denial of petitioner's application for benefits.

MUNSON and McINTURFF, JJ., concur.

Petition for rehearing denied April 9, 1973.

Review denied by Supreme Court June 7, 1973.